UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-737-H

OWNERS INSURANCE COMPANY                                                PLAINTIFF

V.

STATE AUTO PROPERTY AND CASUALTY COMPANY                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

In this declaratory action between two insurers, Plaintiff, Owners Insurance Company ("Owners Insurance"), has moved for summary judgment claiming reimbursement from Defendant, State Auto Property and Casualty Company ("State Auto") for a pro rata share of one-half of the $259,000 settlement paid in the underlying non-motor vehicular personal injury action. State Auto contends that Owners Insurance's policy is primary and thus State Auto has no duty to reimburse.

This dispute requires the Court to reconcile two decisions of Kentucky's highest court: *Ohio Casualty Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 511 S.W.2d 671 (Ky. 1974) and *Kentucky Farm Bureau Mutual Insurance Co. v. Shelter Mutual Insurance Co.*, 326 S.W.3d 803 (Ky. 2010). The dispute concerns the proper application of the so-called "mutual repugnancy" rule which requires a pro-rata sharing of insurance liability among certain insurers. After carefully considering all the arguments and the issues and for the reasons that follow, the Court predicts that Kentucky's highest courts would apply the mutual repugnancy rule in our circumstances.

I.

The stipulated facts are as follows. The underlying claim arose on June 16, 2007, when a pontoon boat being driven by Matt Higgins and/or his daughter, Kellie, collided with Jeremy Wood's boat. Wood was seriously injured and filed a civil suit in state court, naming both Matt Higgins and his father David Higgins, the pontoon's owner, among the plaintiffs. Wood's personal injury action settled for $300,000. The Higgins defendants' insurer, Owners Insurance, paid $259,000, while the rest of the co-defendants contributed $41,000 collectively. Owners Insurance now seeks a pro rata share reimbursement from State Auto, Matt Higgins' insurer.

Two pertinent insurance policies were effective on the date of the accident. Owners Insurance issued a policy for David Higgins, owner of the pontoon driven by Matt and/or Kellie, that provided $500,000 in liability coverage and specifically listed the pontoon involved in the accident in the schedule of covered items. State Farm had issued a homeowners policy to Matt Higgins that also covered up to $500,000 for personal liability and included watercraft liability.

Both parties have stipulated the "sole issue" for the Court to determine is the priority of coverage for the agreed total loss amount of $259,000.[1] Thus, for purposes of this Order, the Court presumes both policies encompassed the risk involved in the underlying litigation and disregards as moot any argument to the contrary.[2]

II.

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a

---

[1] Agreed Stipulation of Facts and Damages, DN 12.
[2] Specifically, in its reply to Owners Insurance's motion for summary judgment, State Auto contends that its policy is inapplicable to the injuries sustained by Wood, for which reason State Auto did not participate in settling Wood's claims and never undertook to pay any portion of the agreed amount. State Auto argues that Owners Insurance knew this yet voluntarily paid the portion attributable to the claims against the Higgins defendants anyway, and "[b]ased on this alone, Owners Insurance is not entitled to indemnity or contribution from State Auto." DN 14, p.3. The content of the Agreed Stipulation of Facts and Damages, DN 12, precludes argument about coverage. The narrow issues before the Court are priority and allocation of loss between the two battling insurers.

motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Northland Ins. Co. v. Guardsman Prods., Inc.*, 141 F.3d 612, 616 (6th Cir. 1998).

Because this is a diversity case, we apply the law of the forum state. *Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). In applying Kentucky law to the insurance contracts here, we "'follow the decisions of the state's highest court when that court has addressed the relevant issue.'" *Id.* (quoting *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000)). If the state's highest court has not directly addressed the issue, we must "'anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.'" *Id.* (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). We also view intermediate state appellate courts' decision as persuasive unless it is clear the state's highest court would decide the issue differently. *Id.* (citing *In re Dow Corning*, 419 F.3d at 549).

III.

The single issue in this case is whether the rule of mutual repugnancy applies here according to the rule in *Ohio Casualty* or whether the Kentucky Supreme Court's recent decision in *Shelter* precludes its application.

Generally, courts have applied the rule of repugnancy where "other insurance" clauses or "excessive coverage" clauses conflict. Thus, where competing insurance policies each contain conflicting "other insurance" clauses or "excessive coverage" clauses, clauses shall not be applied, and benefits shall instead be prorated according to coverage limits of each policy. *See* 15 Couch on Ins. § 219:47; *Allstate Ins. Co. v. Chicago Ins. Co.*, 676 So. 2d 271 (Miss. 1996).

3

Kentucky adopted the rule in *Ohio Casualty*. Plaintiff urges that in *Shelter* the Kentucky Supreme Court did not overrule the rule of mutual repugnancy. Defendant argues that it did and urges this Court to extend the black letter rule set forth in *Shelter* to the current circumstances.

A.

Thirty-six years ago, in *Ohio Casualty*, Kentucky's highest court discussed liability for a car accident involving a vehicle on loan from a garage. Both the garage liability policy and the driver's automobile insurer provided coverage for the accident. Both policies also included "non-coverage" or excess insurance clauses which sought to relieve the respective companies from liability arising under its policy where there was other collectible insurance available to cover the liability either in whole or part. The Court found the two non-coverage clauses to be mutually repugnant and ordered proration:

> Our analysis…is that both policies attempted to limit coverage to the excess over the other and that the provisions with respect to proration are irreconcilable; therefore, it is our opinion that each insurer is jointly obligated to defend James and to indemnify him up to the limit of the smaller of the two policies (Ohio Casualty) and State Farm for the remainder up to the limit of its policy.

511 S.W.2d 671, 675 (Ky. 1974). At the time, the Kentucky Motor Vehicle Reparations Act, KRS 304.39-010, *et seq*. (the "MVRA") was not yet effective and, for quite sensible reasons, the Court did not discuss it.[3]

Since then both Kentucky federal and state courts, including this one, have followed this approach in a variety of contexts. *See Great Am. Ins. Co. v. Lawyers Mut. Ins. Co. of Ky.*, 492 F.Supp.2d 709, (W.D. Ky. 2007) (applying the two-step approach to repugnant clauses in a dispute regarding coverage for a legal malpractice claim); *Northbrook Prop. and Casualty Ins. Co. v. West Am. Ins. Co.*, 1 Fed. App'x 268 (6th Cir. 2001) (unpublished) (applying the mutually

---

[3] The MVRA (KRS § 304.39-010, *et. seq.*) was approved April 2, 1974, but did not become effective until July 1, 1975. The *Ohio Casualty* decision was issued June 14, 1974.

repugnant rule to conflicting policies in the context of a construction site fire case). *See also* 7A AM. JUR. 2D *Automobile Insurance* § 513 (2013) (listing decisions from multiple state and federal courts finding clauses mutually repugnant and holding each insurer liable for a share of the loss).

Recently, the Kentucky Supreme Court considered a case which raised some questions about the application of this rule. *Shelter*, 326 S.W.3d 803 (Ky. 2010). That case involved a motor vehicle accident in which the insurer of the vehicle and vehicle owner (Shelter) paid all damages in the underlying suit then filed a declaratory judgment action seeking a pro-rata allocation of damages between it and the permissive driver's insurer. The Court of Appeals found that the insurers' policies contained mutually repugnant excess insurance clauses and thus prorated damages between the insurers. The Kentucky Supreme Court reversed, holding that "Shelter, the vehicle's and vehicle owner's insurer, was the primary insurer as mandated by the spirit and intent of the MVRA, KRS 304.39-010, *et. seq.*, [thus] hold that the Court of Appeals erred when it…prorated the damages." *Id.* at 804 (internal citations omitted).

B.

Upon careful review, the Court concludes that the Kentucky Supreme Court's decision in *Shelter* does not extend to our circumstances here. A number of sound reasons support this conclusion.

The *Shelter* court acknowledges the repugnancy rule as the default approach in conflicts between insurers.[4] It also clarifies that its opinion represents an exception to the general

---

[4] *See, e.g., Shelter*, 326 S.W.3d at 807 ("Generally, where the focus is on each insurer's competing avoidance of liability clauses, courts take a bifurcated and sometimes complicated approach, with the court examining the policies, and if the court finds them mutually repugnant, it then apportions the loss in various ways between each insurer."); *id.* at 805 ("[N]ormally we would be called on to determine which policy, if any, is primary and which is excess, or if both are excess and mutually repugnant, how the damages should be pro-rated between them.").

approach, compelled by the policy behind the MVRA, and not an outright rejection of the bifurcated approach. The court said,

> Admittedly, parties may contract for such coverage as they wish. And the terms of such policies 'must control unless [they] contraven[e] public policy or a statute'…Yet, to be valid *in respect of the MVRA*, such contract, or clause thereof, must comply with its statutory scheme, including its intent and purposes.

*Id.* at 811 (emphasis added). It made this distinction while recognizing that the "apportionment methods" must be adhered to in other circumstances. *Id.* at 810. From this language, it seems evident that the court intended to avoid overturning the general rule.

The court emphasized that its departure from the general approach was motivated by the spirit and intent of the MVRA. *See, e.g. Id. at* 811 ("We glean from the legislative intent underlying the MVRA that the General Assembly intended, that in instances where both the vehicle owner and non-owner driver are separately insured, the vehicle owner's insurance shall be primary."); *id.* at 805 ("We decline, in this instance, to further embroil Kentucky courts in unduly complicated two-step insurance policy interpretations…because such considerations are inconsistent with the policies and intent of the MVRA."). It recapitulated the purposes section of the MVRA statute then rejected the bifurcated approach in automobile accident cases in order to bring the law in this area more in line with the goals of the MVRA. *Id.* at 810.

Finally, *Shelter* explicitly names three cases that its decision overrules "to the extent inconsistent herewith." *Shelter*, 326 S.W.3d at 811. *Ohio Casualty* is not among those listed. Each of the cases the Court overruled addressed only the same automobile owner-driver context considered in *Shelter. Omni* involved a father and son each with non-commercial automobile insurance. *Omni Ins. Co. v. Kentucky Farm Bureau Mut. Ins. Co.*, 999 S.W.2d 724, 725-26 (Ky. Ct. App. 1999). *Register* considered a situation where a business owner's son loaned a company

car, covered by a commercial garage policy, to a friend who then had an accident. *State Farm Mut. Automobile Ins. Co. v. Register,* 583 S.W.2d 705, 706 (Ky. Ct. App. 1979). *Royal-Globe* arose from an accident involving a rental car covered by a commercial garage policy. *Royal-Globe,* 560 S.W.2d 22, 23-24. Nothing about the *Shelter* court's decision to overrule those three cases indicates that it intended its ruling to extend to the boat owner/permissive driver context, especially not here where the battle is between two insurers seeking to avoid payment of personal liability coverage under a homeowners policy.

C.

Mainly, State Auto does not contest that *Shelter* directly concerned only the MVRA. Rather, it argues that *Shelter*'s applicability should not be limited because "*Kentucky Farm Bureau* addressed practical reasons for the change that are also applicable here." DN 14 at 5. Specifically, State Auto points to three concerns in the *Shelter* opinion.

First, State Auto focuses on the portion that discussed how trial courts might come to differing conclusions when determining whether two clauses are actually mutually repugnant. *Id.* State Auto argues this would be unfair to boating accident victims, who would benefit from a bright-line rule to the same extent as victims of auto accidents. While this may be so, federal courts should be careful about extending rulings based on policy considerations where the state courts have had an opportunity to do so and failed. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 608 (6th Cir. 2012).

Second, State Auto highlights the portion of the *Shelter* opinion discussing how "appropriating the loss between the companies presents its own set of problems with varying precedent." DN 14 at 6 (quoting *Shelter*, 326 S.W.3d at 809). While the Kentucky Supreme Court did quote a Fourth Circuit decision from 1985 for three "primary options for pro-rata

7

apportionment" and discussed problems individual to each approach, this portion of the opinion is pure dicta. The matter is not always so complicated. Here, for example, each policy contains an identical coverage limit of $500,000, an amount that was not exhausted by the settlement Owners Insurance paid in the amount of $259,000. DN 13-1 at 2-3; DN 12 at ¶5. Here, both insurance policies boast identical policy limits, the settlement amount falls within this limit, and State Auto has not cited a separate clause in its policy that would dictate a different method of apportionment. This is not a case where sharing joint responsibility will be provided a "windfall" to one insurer or where some other unfairness results, which was the chief concern expressed by the Court in its discussion of the equal share method of proration. *Kentucky Farm Bureau*, 326 S.W.3d at 809. Further, State Auto has stipulated the amount Owners Insurance paid in settlement was reasonable. DN 12 at ¶5. Therefore, the Court finds it equitable that the insurers share joint responsibility for the settlement amount of $259,000 in equal shares.

Finally, State Auto argues that Owners Insurance is primary because its policy specifically covered the boat in question. DN 14 at 7. State Auto frames Owners Insurance as "closer to the risk" based on a three-factor test used by a federal district court in Michigan in 1991. *Id.* (citing *Hastings Mut. Ins. Co. v. Auto Ins. Co. of Hartford*, *Conn.*, 780 F. Supp 1153, 1156 (W.D. Mich. 1991). However, *Hastings* seems distinguishable from the case at bar and therefore unpersuasive. There, the insurance policy found to be primary was a liability policy that specifically covered boats. Here, we have two homeowners policies. DN 13-1 at 2-3. The *Hastings* court even noted that "[i]f the Court was presented with competing homeowners policies, the result might be different." *Id.* at 1154. Further, a more recent case out of Michigan with facts more similar to the case at hand[5] affirms the approach of prorating coverage in a

---

[5] After settling a personal injury action alleging negligence of the boat owner's son, the liability insurer of the father brought a contribution claim against the son's liability insurer. *Pioneer*, 581 N.W.2d 802, 803. The Court of Appeals

"reasonably equitable manner" where "excess clauses with substantively identical meanings…may not be reconciled." *Pioneer State Mut. Ins. Co. v. TIG Ins. Co.*, 581 N.W.2d 802, 806 (Mich. App. 1998).

IV.

Here, both the Owners Insurance and State Auto policies contain "excess" clauses whose purpose is to limit benefits to those amounts in excess of any other available insurance coverage. The two clauses, nearly identical in language,[6] are mutually repugnant. For reasons detailed above, the Court holds that the decision in *Shelter* does not displace the longstanding mutual repugnancy rule applicable to this situation, which requires each policy to share the loss on a co-primary basis by providing pro rata coverage. *See Ohio Casualty*, 511 S.W.2d 671 (Ky. 1974); *Calvert Fire Ins. Co. v. Stafford*, 437 S.W.2d 176, 179 (Ky. 1969). *See also Great American Ins. Co. v. Lawyers Mut. Ins. Co. of Kentucky*, 492 F.Supp.2d 709, 712-13 (W.D. Ky. 2007). The Court finds no evidence in *Shelter* that the Supreme Court intended to extend the rule in MVRA cases to other contexts involving tort victims in owner/permissive driver scenarios. This Court is disinclined to endorse or predict a broader view where the Kentucky Supreme Court has declined to do so.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED Plaintiff's Motion for Summary Judgment is SUSTAINED and State Auto shall reimburse Owners Insurance a pro-rata share of the settlement in the amount of $129,500.

---

found that the trial court properly apportioned settlement costs equally between insurers, given irreconcilable excess coverage clauses and identical policy limits. *Id.*

[6] Owners Insurance's "other insurance" clause provides, "This insurance is excess over any other valid and collectible insurance. However, if the other insurance is specifically written as excess over this policy, the limits of this policy apply first." State Auto's policy provides, "This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy."

This is a final and appealable order.

cc: Counsel of Record